# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>An iPhone cellular telephone in a clear case, with IMEI 354941733072950 | Case No.<br><br>2:23-sw-0045 KJN |

**FILED**
Jan 18, 2023
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-3.

located in the ___EASTERN___ District of ___CALIFORNIA___ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a Controlled Substance |
| 21 U.S.C. § 846 | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

See Affidavit of DEA Special Agent Thomas Wiebold

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
*Applicant's signature*

Thomas Wiebold, DEA Special Agent
*Printed name and title*

Sworn to before me telephonically.

Date: 01/18/23

*Judge's signature*

City and state: Sacramento, California     Hon. Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF DEA SPECIAL AGENT THOMAS WIEBOLD**

I, Thomas Wiebold, being duly sworn, hereby depose and state:

**PURPOSE**

1. This Affidavit is made in support of search warrants for:

    a. An iPhone cell phone, with IMEI 357680888433834 and IMSI 8901260676909161621 07.00, seized from a black Lexus RX350, as further described in **Attachment A-1**.

    b. An iPhone cell phone, with IMEI: 358845633657917 and IMSI: 89148000008166096895, seized from a black Lexus RX350, as further described in **Attachment A-2**.

    c. An iPhone cell phone, with IMEI: 354941733072950 and IMSI: 8901260700742322705 288668, seized from a black Lexus RX350, as further described in **Attachment A-3**.

    d. An iPhone cell phone, with IMEI: 356057363913849; IMSI: 8901260664939249479F 02.03, seized from a black Lexus RX350, as further described **Attachment A-4**.

    e. An iPhone cell phone, with IMEI: 351243322594038; IMSI: 89012803330479953464, seized from a black Lexus RX350, as further described **Attachment A-5**.

2. I believe there is probable cause to believe that the electronic devices described in **Attachments A-1 through A-5** contain evidence, fruits, proceeds, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) (distribution, manufacturing, and possession with intent to distribute controlled substances) and 21 U.S.C. §§ 846 and 841(a)(1) (conspiracy to distribute controlled substances). The evidence, fruits, and instrumentalities to be searched for and seized are more fully described in **Attachment B**.

**AGENT BACKGROUND**

3. I am a Special Agent with the Drug Enforcement Administration, and have been since April 2022. Currently, I am assigned to the DEA Sacramento

District Office. Before this posting, I graduated from the seventeen-week DEA Basic Agent Training Academy in Quantico, Virginia. This training included instruction in the investigation of illicit drug trafficking, including, but not limited to, 21 U.S.C. §§ 841 and 846. Additionally, this training included several hundred hours of comprehensive, formalized instruction in drug identification, detection, and interdiction, financial investigations and money laundering, informant handling, law classes, report writing, seizure and forfeiture of drug related assets, undercover operations, and electronic and physical surveillance procedures. Thus far, as a DEA Special Agent, I have participated in numerous investigations targeting methamphetamine, cocaine, heroin, and illicit pill traffickers operating in the greater Sacramento area.

4. Before joining the DEA, I served in the United States Army from 2012-2018 as an Infantry Officer assigned to the 75th Ranger Regiment, an Army Special Operations unit. During this time, I served as a Platoon Leader and in other leadership roles in which I was responsible for various units comprising of between 40 and 300 personnel. In this capacity, I became a subject matter expert in resource management, multi-purpose canine handling, informant management, and sensitive intelligence collection. In 2017, I served as the deputy targeting officer in Afghanistan for a Combined Joint Special Operations Task Force. In that position, I was responsible for synthesizing multi-source intelligence for identifying military targets on a dynamic battlefield. As a result of my service, I am well-versed in the use of GPS tracking devices, analysis of satellite imagery, and communications interceptions.

5. During the course of my employment as a DEA Special Agent, I have participated in numerous investigations involving the use of federal and state search warrants to collect evidence, including controlled substances, the seizure of narcotics-related records, and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources including physical and electronic surveillance, various types of infiltration (including undercover agents and confidential sources), pen register and trap and trace devices, GPS and telephone tracking devices, trash covers, mail covers, pole cameras, stationary video recording vehicles, audio, and audio/video recording devices.

6. Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with the methods used by organized criminal enterprises, drug trafficking organizations, and street gangs to smuggle and safeguard controlled substances and weapons, to distribute, manufacture, and transport controlled substances, and to collect and launder related proceeds.

7. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

8. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested search warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.

9. This affidavit is based upon my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation. Where I describe statements made by other people (including other special agents and law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and other documents or records in this affidavit, this information is also described in sum, substance, and relevant part.

## STATEMENT OF PROBABLE CAUSE

*Investigation Background*

10. In August 2022, agents from the DEA Sacramento District Office, along with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Yakima, Washington and Sacramento Offices (hereinafter, "the Investigative Agencies"), initiated an investigation into the drug-trafficking activities of Edgar JIMENEZ. Since March 2022, JIMENEZ had contacted an ATF Confidential Source (hereinafter, "CS-1[1]") in Yakima, Washington,

---

[1] CS-1 is an active ATF CS and has been since February 2021. CS-1 has successfully purchased controlled substances and firearms while working as an ATF CS at the direction of ATF agents. These controlled purchases have led to search warrants and the arrests of several individuals. CS-1 agreed to become a CS for consideration on a pending federal charge for dangerous drugs and possession of a machine gun. Due to CS-1's cooperation, the pending judicial case against CS-1 has yet to be adjudicated. CS-1 has four felony convictions, including convictions for unlawful firearms

advertising cocaine for sale. The Investigative Agencies determined that CS-1 could introduce two local, Sacramento-based CSs (hereinafter, "CS-2[2]" and "CS-3[3]") who could meet with JIMENEZ and assist law enforcement with the investigation.

11. On August 12, 2022, JIMENEZ subsequently sold one ounce of cocaine to CS-2 and CS-3. This cocaine was later tested by the DEA Western Regional Lab, which confirmed that the cocaine purchased from JIMENEZ was 28.027 grams ± .003 grams of Cocaine Hydrochloride, with a substance purity of 86% ± 6%.

12. On August 30, 2022, JIMENEZ sold two ounces of cocaine to CS-2 and CS-3.

13. On October 13, 2022, JIMENEZ sold nine ounces of cocaine to CS-2 and CS-3.

***JIMENEZ is Arrested While Attempting to Sell Two Kilograms of Cocaine***

14. At the direction of agents, CS-2 contacted JIMENEZ between November 9, 2022, and November 17, 2022, in order to coordinate a purchase of two kilograms of cocaine. Leading up to the anticipated purchase of the two kilograms of cocaine, JIMENEZ indicated to CS-2 that he did not have the two kilograms of cocaine with him, but instead would be coordinating with another individual in order to have the cocaine available to sell.

15. At approximately 10:03 a.m. on November 17, 2022, the day that JIMENEZ and CS-2 had agreed upon for the transaction, JIMENEZ told CS-2 via a

---

possession, rendering criminal assistance, attempting to elude, and assault. ATF agents have been able to corroborate statements that CS-1 has provided and have found CS-1 to be reliable.

[2] CS-2 is an active DEA CS and has been for approximately three months. CS-2 is currently assisting DEA in exchange for financial compensation. CS-2 has provided law enforcement with accurate and reliable information which have led to multiple successful arrests, search warrants, and drug seizures. CS-2 has no felony criminal convictions, nor any pending criminal cases. For these reasons, DEA considers CS-2 to be reliable.

[3] CS-3 is an active DEA CS and is currently assisting DEA in exchange for financial compensation. CS-3 has been assisting DEA, as well as other law enforcement agencies, for approximately three and a half years. CS-3 is currently on California Department of Corrections and Rehabilitation Parole for attempted robbery. CS-3 has provided accurate and reliable information for the duration of the time that CS-3 has been assisting law enforcement. CS-3 has never been found to provide false information. CS-3 has prior convictions for misdemeanor assault and sales of narcotics. CS-3 has no known pending criminal cases. For these reasons, DEA considers CS-3 to be reliable.

Signal[4] message "Yessir yessir bruh just waitin for bruh to wake up I already know y'all 100." Based on my training and experience, I know that drug dealers often store bulk drugs at a location other than their primary residence, often referred to as a "stash house." I also know based on my training and experience that another member of the drug trafficking organization is often responsible for transporting drugs from the stash house to a dealer like JIMENEZ, just prior to a drug deal. Such transporters are known as "couriers." Based off of this message, JIMENEZ appeared to be explaining to CS-2 that he was waiting for the courier to wake up and bring the cocaine from the stash location to JIMENEZ.

16. Beginning at 9:37 a.m. earlier that morning, surveillance agents had followed JIMENEZ in a white Ford SUV from his residence at 5440 Marconi Avenue, Apartment 1, Carmichael CA to 10448 Malaga Way, Rancho Cordova, CA where JIMENEZ picked up Isaiah MUNOZ, another individual known to agents as a Woodland-based Norteno gang member with prior drug convictions. At the time that JIMENEZ sent the messages about "waiting for bruh," surveillance agents identified that JIMENEZ and MUNOZ were the only occupants of the white Ford Expedition. Later, at approximately 10:45 a.m., JIMENEZ again told CS-2 via a Signal message, "My fault on the lag bruh I told this nigga to be ready earlier but u know how that syrup be imma start blowin em up at 11." Agents therefore determined that neither JIMENEZ nor MUNOZ had the two kilograms of cocaine with them, and were still waiting for the courier to arrive with the cocaine.

17. At approximately 11:51 a.m., JIMENEZ messaged "Ready cuzo," to CS-2 over the Signal app, and proceeded to direct CS-2 to meet in front of Famous Footwear, 3681 Truxel Road, Sacramento, CA in order to conduct the transaction. This change from "waiting for bruh" indicated that JIMENEZ's courier had arrived with the cocaine, and that JIMENEZ was now equipped to conduct the transaction. Surveillance agents also observed a black Lexus RX350 that had just arrived in the same parking lot as JIMENEZ's white Ford SUV, and had parked in the immediate vicinity of JIMENEZ.

---

[4] Signal is an end-to-end encrypted cell phone app-based messaging platform. JIMENEZ had briefly communicated via standard text messages and cell phone calls, however, he preferred to communicate with CS-2 over Signal, particularly when discussing illegal activities. JIMENEZ has a 2018 federal conviction for 21 U.S.C. 843(B) - Use of a Communication Facility to Facilitate a Drug Trafficking Offense. Based on my training and experience, drug traffickers will attempt to circumvent traditional means of communication to conduct their illegal activities in order to avoid detection by law enforcement. JIMENEZ is likely particularly sensitive to traditional phone communication given his criminal history, and thus preferred to use the Signal app.

Surveillance agents then observed both MUNOZ and JIMENEZ exit the white Ford SUV, walk over to the black Lexus RX350, and enter the front and rear passenger side seats.

18. Once CS-2 indicated that he was arriving, JIMENEZ sent the messages "Yup park next to this Lexus," and "I just hopped in with bruh." Both of these messages add additional corroboration that JIMENEZ entered the black Lexus RX350 in order to retrieve the two kilograms of cocaine.

19. A short while later, CS-2 and CS-3, who were riding together in the CS vehicle, parked in the vicinity of the black Lexus RX350 and the white Ford SUV. JIMENEZ then exited the black Lexus RX350 and entered the CS vehicle carrying a gray backpack. Once inside the CS vehicle, JIMENEZ opened the backpack to reveal the two kilograms of cocaine, which were packaged in cellophane and tape.

20. After JIMENEZ showed CS-2 and CS-3 the cocaine, law enforcement vehicles engaged lights and sirens and surrounded the CS vehicle, the white Ford SUV, and the black Lexus RX350. Agents with clearly labeled police markings exited their vehicles, announced that they were police, and apprehended JIMENEZ, MUNOZ, and the driver of the black Lexus RX350, who was identified as Oscar FLORES. Agents found the two kilograms of cocaine inside the CS vehicle.

21. Agents then obtained consent to search the black Lexus RX350 from FLORES. Inside, agents discovered green cellophane packaging material in the rear passenger compartment where JIMENEZ had been sitting, which was consistent with the cellophane that had been used for wrapping one of the kilograms of cocaine that was discovered inside the CS vehicle. Agents also discovered five cell phones inside the vehicle. One was claimed by FLORES and one was claimed by MUNOZ. JIMENEZ did not claim any phones. Because JIMENEZ, MUNOZ, and FLORES all appeared to be co-conspirators in the sale of the two kilograms of cocaine to CS-2, agents seized all five phones from the vehicle as evidence of the facilitation of the crime. The phones were locked, and JIMENEZ, MUNOZ, and FLORES did not give consent to unlock and search the phones.

22. Agents did access the phones for the limited purpose of switching them into Airplane Mode in order to preserve battery life. The phones were subsequently transported to the DEA Sacramento District Office and have

been maintained in continuous DEA custody since they were seized. The phones were also placed on chargers in order to preserve battery life.

23. Agents executed a federal arrest warrant and subsequently arrested JIMENEZ. MUNOZ was also arrested for violating his parole. FLORES was not arrested, and was allowed to depart in the black Lexus RX350.

**The Parole Search of Isaiah MUNOZ's iPhone on November 18, 2022**

24. On November 18, 2022, SA Wiebold met with California Department of Corrections and Rehabilitation Officer Edward Rodriguez, who conducted a parole search of the phone belonging to MUNOZ. During this limited search, Officer Rodriguez did not find anything immediately apparent regarding the drug transaction that had occurred between JIMENEZ and CS-2. However, I know based on my training and experience, and conversations with other agents, that drug dealers will often conceal or delete messages relating to criminal activity. Such messages may become more accessible after using computer software in order to search the phone.

25. After Officer Rodriguez's search, SA Wiebold brought MUNOZ's phone back to the DEA Sacramento District Office and secured it.

**Jimenez charged with distribution of cocaine and possession with intent to distribute cocaine.**

26. On January 12, 2023, JIMENEZ was charged by indictment with three counts of distribution of cocaine and two counts of possession with intent to distribute cocaine.  2:23-CR-00007-KJM.

## CONCLUSION

27. Based on my training and experience, and through consultation with experienced Special Agents and police officers, I know the following to be true with respect to individuals who engage in criminal activity to obtain and sell drugs by illegal means:

28. Those engaged in criminal activity utilize cellular telephones and other electronic devices to further their criminal conduct. This includes coordinating with co-conspirators, maintaining contact with sources of supply, tracking shipments for packages both incoming and outgoing, and corresponding with customers.

29. In my experience, drug traffickers may take or cause to be taken, photographs or videos of themselves, their associates, their property, and their drugs. Often these videos and photos are taken with cellular telephones or other electronic devices.

30. I hereby request that search warrants be issued for the locations described in **Attachments A-1 through A-5** for the items set forth in **Attachment B** based upon the aforementioned facts.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

/s/
_____
THOMAS WIEBOLD
DEA Special Agent

Sworn and Subscribed to me telephonically
on January 18, 2023,

_____
Hon. KENDALL J. NEWMAN
United States Magistrate Judge

Approved as to form:

_____
Justin L. Lee
Assistant United States Attorney

## ATTACHMENT A-3

### *Location to be Searched*

An iPhone cellular telephone in a clear case, with IMEI 354941733072950 and IMSI 8901260700742322705 288668, assigned DEA Exhibit N-21 and seized from Oscar FLORES's black Lexus RX350 on November 17, 2022.

This item is currently in the custody of DEA in Sacramento.

## ATTACHMENT B

### *Items to be Seized*

Agents are authorized to search and seize property that constitutes evidence, fruits, and instrumentalities of violations of the following federal statutes (the "TARGET OFFENSES"), committed by JIMENEZ, MUNOZ, and FLORES: 21 U.S.C. § 841 (distribution of controlled substances) and 21 U.S.C. § 846 (conspiracy to distribute controlled substances), including:

1. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the Electronic Devices identified in **Attachments A-1 through A-5** or on a server and associated with the Electronic Devices identified in **Attachments A-1 through A-5**, including:

    a. Incoming call history;

    b. Outgoing call history;

    c. Missed call history;

    d. Outgoing text messages;

    e. Incoming text messages;

    f. Draft text messages;

    g. Telephone books;

    h. Emails;

    i. Data screens or files identifying the telephone number associated with the mobile telephones searched;

    j. Data screens, files, or writings containing serial numbers or other information to identify the electronic devices searched;

    k. Voicemails;

    l. User-entered messages (such as to-do lists); and

    m. Stored media such as photographs or videos.

2. Any passwords used to access the electronic data described above.

3. Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions related to the devices' locations on or about November 17, 2022.

4. All information and records related to violations of 21 U.S.C. § 841(a) (drug trafficking) and/or 21 U.S.C. § 846 (conspiracy to traffic drugs), including:

    a. Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;

    b. Data, information, or documents related to the distribution of controlled substances, including the acquisition, possession, and use of equipment, paraphernalia, and materials used in the distribution process, including firearms;

    c. lists of customers and related identifying information;

    d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    e. any information related to sources of drugs or drug manufacturing materials and equipment (including names, addresses, phone numbers, email addresses, or any other identifying information);

    g. all bank records, checks, credit card bills, account information, and other financial records;

    h. data, information, or documents related to the receipt of proceeds from controlled substances distribution and the transfer, investment, control, and disposition of those proceeds;

    i. records of Internet Protocol addresses used;

    j. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    k. any communications related to drug trafficking; and

    l. stored media such as photographs or video.

5. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>An iPhone cellular telephone in a clear case, with IMEI 354941733072950 | )<br>)<br>) Case No.   2:23-sw-0045 KJN<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the   EASTERN   District of   CALIFORNIA
*(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-3.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   February 1, 2023
*(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.   ☑ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
  any duty magistrate judge  .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   01/18/23 at 1:40 p.m.              *Kendall J. Newman*
                                                         *Judge's signature*

City and state:   Sacramento, California            Hon. Kendall J. Newman, U.S. Magistrate Judge
                                                         *Printed name and title*

| **Return** ||| 
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: |||

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                                                                *Executing officer's signature*

                                                                                *Printed name and title*

Subscribed, sworn to, and returned before me this date.    _____    _____
                                                                            *Signature of Judge*                  *Date*

Case 2:23-sw-00045-KJN   Document 1   Filed 01/18/23   Page 14 of 14